**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(WEST PALM BEACH DIVISION)**

| | |
|---|---|
| In re: | Case No.: 20-22967-EPK |
| PLATO CHRIS FOUFAS, | (Chapter 7) |
| Debtor. | |
| DEBORAH MENOTTE, as Chapter 7 Trustee for the Debtor, Plato Chris Foufas, | Adversary No.: 21-01362-EPK |
| Plaintiff, | District Court No. _____ |
| v. | |
| PLATO CHRIS FOUFAS, et al. | |
| Defendants. | |

## DEFENDANT TIMOTHY FOUFAS' MOTION TO WITHDRAW THE REFERENCE[1]

This case is about Debtor Plato Chris Foufas' ("Debtor") alleged decades-long scheme to

hide assets from and/or defraud his creditors, primarily his ex-wife Theodora (Teddy) Foufas

("Mrs. Foufas") and the IRS, purportedly using foreign trusts and bank accounts. Defendant

Timothy Foufas ("Tim Foufas") is the son of Debtor and Mrs. Foufas. Mrs. Foufas is actively

assisting her son in defending this case. Forcing her, one of the two most significant creditors in

this case, to expend resources to defend litigation purportedly brought for her benefit simply

does not make any sense. In fact, Tim Foufas, as his mother's beneficiary, will be the ultimate

---

[1] This Motion is being filed in this Court (the "Bankruptcy Court") now as is required (though pursuant to Local Rule 5011-1 it will be heard by the United States District Court for the Southern District of Florida (the "District Court")). S.D. Fla. L. Rule 5011-1(A)-(C). However, Tim Foufas does not consent to the jurisdiction of the Bankruptcy Court or the District Court because neither have personal jurisdiction over Tim Foufas. Contemporaneously with this Motion, Tim Foufas is filing a Motion to Dismiss based on a lack of personal jurisdiction in the Bankruptcy Court.

recipient of a large portion of any recoveries made by Deborah Monette, as Chapter 7 Trustee ("Plaintiff" or the "Trustee").

Tim Foufas was not a part of Debtor's scheme and never attempted to defraud his mother, the IRS, or any other creditor of Debtor. The only allegations in the adversary complaint filed October 8, 2021 (the "Second Adversary Complaint") by Plaintiff concerning Tim Foufas are that, as part of his past work for the Debtor's companies, Tim Foufas received three payments. Based on these three payments, none of which was for work performed in Florida, Plaintiff asserts fraudulent conveyance claims against Tim Foufas under federal bankruptcy law and Delaware and Florida state law. Tim Foufas asserts that those payments were honestly made and earned by him in good faith well before Debtor's bankruptcy filing.

While the Trustee might dispute Tim Foufas' defenses, there can be no dispute that the Trustee's claims against Tim Foufas have nothing to do with the vast majority of the allegations contained in the complaint. Needlessly lumping unrelated claims against Tim Foufas into the vast and complex allegations against the Debtor and his related entities will only create delay, confusion, and prejudice. Furthermore, it needlessly imposes additional costs in time and money upon both the Court and the litigants.

Tim Foufas is not a creditor of the Debtor. He has an absolute right to a jury trial as to the claims against him and specifically asserts this right.[2] Based on this right, the lack of factual or legal connection between the claims against Tim Foufas and the claims against Debtor and the entities controlled by Debtor, the inability of this Court to comport with due process in exercising personal jurisdiction over Tim Foufas, and the assertion of state law claims against Tim Foufas not asserted against Debtor or entities controlled by Debtor, this Court should

---

[2] Contemporaneously herewith, Tim Foufas has also filed a jury demand.

immediately withdraw the reference of this matter to the Bankruptcy Court as to all claims against Tim Foufas.

## I. DESIGNATION OF MATERIALS NECESSARY TO DISTRICT COURT'S CONSIDERATION OF THIS MATTER

Pursuant to Local Rule 5011-1(B)(1), Tim Foufas hereby designates the following portions of the record as necessary to the District Court's consideration of this Motion:

1. Second Adversary Complaint, Case No. 21-01362-EPK (Bankr. S.D. Fla.), ECF No. 1

2. First Adversary Complaint, Case No. 21-01235-EPK (Bankr. S.D. Fla.), ECF No. 1

3. Turnover Order, Case No. 20-22967 (Bankr. S.D. Fla.), ECF No. 50

4. Motion to Strike Affirmative Defenses to First Adversary Complaint, Case No. 21-01235-EPK (Bankr. S.D. Fla.), ECF No. 15

5. Tim Foufas' Demand for Jury Trial, Case No. 21-01362-EPK (Bankr. S.D. Fla.), ECF No. 24

6. Tim Foufas' Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative for Severance, and Motion Pursuant to Fed. R. Bank. P. 7016(B) Objecting to Entry of Final Orders or Judgments, Case No. Case No. 21-01362-EPK (Bankr. S.D. Fla.), ECF No. 25 (and the exhibits thereto)

## II. BACKGROUND- DEBTORS' BANKRUPTCY AND THE ADVERSARY COMPLAINTS

Debtor filed his Chapter 7 bankruptcy petition on November 27, 2020. Second Adversary Complaint, Case No. 21-01362-EPK (Bankr. S.D. Fla.), ECF No. 1, ¶ 25. Before filing the Second Amended Complaint, Plaintiff filed an adversary complaint (Case No. 21-01235-EPK (Bankr. S.D. Fla.), ECF No. 1, the "First Adversary Complaint") against Debtor under 11 U.S.C. § 727 objecting to the discharge of Debtor's obligations in bankruptcy. *See generally* First Adversary Complaint. Generally, the First Adversary Complaint alleges that Debtor "has consistently made false oaths

and misrepresentations to the [Bankruptcy] Court, the Trustee and creditors of the Estate" and has "undertaken efforts designed to intentionally delay or frustrate creditors including but not limited to [Mrs. Foufas] and the IRS, while continuing to live an extremely lavish lifestyle at the expenses of his creditors. *Id.*, ¶¶ 74, 76. Plaintiff also sought, and was granted, an order from the Bankruptcy Court requiring Debtor to turn over to Plaintiff all funds in all bank accounts in the name of an offshore trust owned, controlled or operated by Debtor (the "KM Settlement" or "KM Trust") and prohibiting Debtor from transferring, selling, encumbering, or otherwise disposing of any funds or property owned by the KM Trust. *See generally* Turnover Order, Case No. 20-22967 (Bankr. S.D. Fla.), ECF No. 50 (the "Turnover Order"). Neither Tim Foufas, nor any entity he controlled, owned, or operated had any role in any improper distributions or any present ability to access any of the funds at issue in the Turnover Order.

The Second Adversary Complaint was filed against fourteen defendants—Debtor, eleven entities allegedly owned, operated, or controlled by Debtor, Tim Foufas, and one entity with no continuing operations owned by Tim Foufas ("Astor Street"). Second Adversary Complaint, ¶¶ 3-20. The Second Adversary Complaint includes many factual allegations substantially identical to the factual allegations of the First Adversary Complaint related to Debtor's alleged decades-long scheme to hide income, funds, or assets from his creditors, most significantly Mrs. Foufas. *Compare* First Adversary Complaint, ¶¶ 46-59 and Second Adversary Complaint, ¶¶ 36-51.

The Second Adversary Complaint generally alleges a decades-long scheme by Debtor to hide assets. The purported genesis of this scheme was the dissolution of Debtor's marriage to Mrs. Foufas in 1995, which, in 1996 allegedly led Debtor created an offshore trust ("KM Settlement" or "KM Trust") into which Debtor "transferred substantially all of his business holdings and interests." Second Adversary Complaint, ¶¶ 37-38. There is no allegation that Tim Foufas had

anything to do with the decision to create or fund the KM Trust. *See generally id.* Furthermore, Tim Foufas is not presently a beneficiary of KM Settlement. *Id.*, ¶ 37.

In the ongoing divorce proceedings, Mrs. Foufas was purportedly awarded $22,000 in monthly maintenance payments and the KM Settlement was allegedly determined to be a fraudulent conveyance. *Id.*, ¶ 40. Thereafter, Debtor, allegedly in concert with his current wife Charmaine Brower a/k/a Charmaine Foufas ("Brower"), purportedly "transferred and assigned all of their then-existing personal property to the KM Settlement." *Id.*, ¶ 42. Again, there is no allegation that Tim Foufas had anything to do with this transfer, nor with Debtor's obligation to make monthly maintenance payments to Mrs. Foufas. *See generally id.*

In 2016, Mrs. Foufas allegedly filed a petition seeking to have Debtor found in indirect civil contempt for failing to make his required monthly maintenance payments to her beginning in 2006. *Id.*, ¶ 43. In August 2019, Debtor was apparently found in civil contempt for failing to make those payments and ordered to pay Mrs. Foufas $5,183,621.78. *Id.*, ¶ 45. That order was upheld on appeal in June 2020. *Id.*, ¶¶ 47-48. Debtor has allegedly failed to pay any of that amount to Mrs. Foufas, and, as a result of his failure to do so, was recently incarcerated for failing comply with the contempt order requiring him to do so. *Id.*, ¶ 60. Again, neither the payment obligation nor the failure to make such payments had anything to do with Tim Foufas.

Plaintiff alleges that Debtor "continued to conceal his business interests" and also his "other assets in the KM Trust through a series of amendments and changes in the trust situs." *Id.*, ¶ 49. Plaintiff alleges that Debtor did so "to fund his lavish lifestyle for himself and Brower, while attempting to place his substantial assets beyond the reach of creditors." *Id.* As examples, the KM Settlement purportedly includes a Swiss bank account holding well over $1 million, stock and membership interests in various business entities, and "personal property, cash and assets of the

Debtor and Brower." *Id.*, ¶ 51. Debtor has allegedly used these assets of the KM Trust, and other assets which Plaintiff alleges the Debtor continues to control even after filing for bankruptcy, to continue to fund his purportedly lavish lifestyle. *Id.*, ¶ 52. Again, this has nothing to do with Tim Foufas, whose legitimate work was compensated and never concealed.

Specifically, Plaintiff alleges that Debtor "freely accessed and obtained" funds from the KM Trust including for "the payment of his and Brower's personal expenses" and that the funds distributed and held in bank accounts in the name of various entities are actually "principally for the personal use and enjoyment of the Debtor and Brower, and direct payment of their personal living expenses to the exclusion of creditors of the Estate. This scheme has allegedly allowed the Debtor to under report and conceal his actual sources of income from the Plaintiff, [Mrs. Foufas], IRS and creditors of the Estate." *Id.*, ¶ 55. Plaintiff alleges that Debtor took a distribution of $275,000 in January 2021, and sought distributions totaling another $250,000 in April 2021. *Id.*, ¶¶ 58-59. Once again, none of this has anything to do with Tim Foufas.

Plaintiff also alleges that Debtor, beginning in 2019, used the bank accounts of an inactive business to receive distributions from the KM Settlement which he "fraudulently claimed as business deductions for personal expenses of the Debtor to avoid payment of income taxes." *Id.*, ¶ 64. The Trustee further alleges that Debtor and Brower "seasonally reside" at a residence in Colorado with a purported lease paid by Briarcliffe Lakeside Associates, LLC, one of the entities allegedly owned, operated and controlled by Debtor, "without any legitimate business purpose, and without accounting to the Estate." *Id.*, ¶ 83; *see also id.*, ¶ 4. There is no allegation that Tim Foufas supported or enabled Debtor's lavish lifestyle, ever misused funds for his own personal expenses, engaged in any attempt to shield assets from the IRS, or had any role in improper distributions from the KM Trust. *See generally id.* Nor would Tim Foufas have benefitted in any

way from Debtor placing Debtor's assets outside the reach of Debtor's creditors including his mother, Mrs. Foufas.

Out of eighty seven paragraphs of factual allegations concerning Debtor's Swiss bank accounts, Debtor's trust sited in various foreign countries, and Debtor's Colorado vacation home, the Second Adversary Complaint barely mentions Tim Foufas, or the only two defendant entities in which he had any direct or indirect interest, Astor Street, owned solely by Tim Foufas, and Sixth and Gest Properties, LLC d/b/a Devon Self Storage ("Sixth and Gest"). *Id.*, ¶¶ 9, 10, 14. In fact, the only allegations against Tim Foufas, Astor Street or Sixth and Gest are that Astor Street's 20% membership interest in Sixth and Gest, and three transfers to Tim Foufas, in March 2017, January 2018 and April 2019 were all "part of the Debtor's scheme to hinder, delay or defraud creditors of the Estate, and without […] reasonably equivalent value." *See id.* ¶¶ 74, 76; *see also id.*, ¶¶ 70, 75. However, as explained below, Astor Street's membership interest in Sixth and Gest and the three payments to Tim Foufas were all earned and received in good faith. In addition, this was unconnected in any way to Debtor's alleged scheme to defraud Mrs. Foufas, the IRS, or any other creditor, as detailed in the Second Adversary Complaint and as summarized above.

Plaintiff asserts fraudulent conveyance claims against Tim Foufas under the Bankruptcy Code, Florida law, and Delaware law, and lumps in Tim Foufas with all defendants in seeking injunctive relief under 11 U.S.C. § 105 (Count XII) even though that claim is derivative of Counts I-VII, which are not asserted against Tim Foufas. *See id.*, ¶¶ 182, 183, 185; *see generally id.* On the other hand, against the other defendants, generally owned, operated, or controlled by Debtor, Plaintiff asserts claims for declaratory judgment as to the ownership of those entities (Counts I and III), for turnover of property of Debtor's bankruptcy estate (Counts II and V), for alter ego/piercing the corporate veil (Count IV), for substantive consolidation of non-debtor business entities with

and into the bankruptcy estate (Count VI), and for fraudulent conveyance as to transfers from KM Settlement to Debtor, the principal beneficial of KM Settlement (Count VII).

### III. BACKGROUND- TIM FOUFAS' TANGENTIAL CONNECTION TO THE EVENTS OF THE BANKRUPTCY AND THE SECOND ADVERSARY COMPLAINT[3]

Tim Foufas is a long-time resident of Chicago, Illinois. He has had a long career in real estate and corporate investment. In addition to working with his father, Tim Foufas has worked for a private equity investment firm and as a financial analyst, with a focus on real estate investment. Beginning in July 2005, Tim Foufas worked with his father in Chicago, Illinois. Starting in 2007, Tim Foufas was employed by Levalon Properties LLC ("Levalon"), a Delaware LLC based in Illinois[4]. Levalon's primary business was the management of apartment complexes. Plato Foufas & Company, LLC ("PFCO") was an affiliated company that provided asset management services for many of the properties managed by Levalon.[5] Tim Foufas also worked with PFCO. PFCO was the outward facing company used as the "business card name."

The Second Adversary Complaint alleges three payments from Plato Foufas & Company, LLC ("PFCO") to Tim Foufas. All three were for work he performed. Tim Foufas was personally responsible for asset management and related services for a 1,337 unit apartment complex located in Griffith, Indiana (the "Mansards Apartments") based on an agreement between himself and PFCO. The property was not performing well, creating a risk of significant loss to PFCO and/or its affiliates. However, Tim Foufas' work helped turn the property into a well-performing property, which led to a higher sales price, and avoided such a loss.

---

[3] Facts contained herein not included with complaint are offered as background only given the present stage of the litigation.
[4] *See* Illinois Secretary of State Record, attached hereto as Exhibit 1.
[5] Each managed property was separately organized with varied ownership and investors.

Based on his agreement with PFCO, Tim Foufas was to be paid 25% of relevant fees upon the sale of the Mansards Apartments. The relevant fees were $1,627,938, which included a 2% sale fee ($1,267,418), a deferred refinancing fee from a 2011 refinancing ($255,000), and disposition fees ($105,520). Tim Foufas' 25% of those fees was $407,000. By agreement, Tim Foufas was paid that amount in two tranches, specifically $200,000 in March 2017 and $207,000 in January 2018. This was compensation for years of work. Tim Foufas received a 1099-M from PFCO for both 2017 and 2018 reflecting these payments, and reported both payments to the IRS.

Ultimately, all of the apartment complexes managed by Levalon were sold and Levalon wound down and ceased its business operations. Tim Foufas worked for Levalon through June 30, 2018, and continued to look for transactions on behalf of PFCO thereafter. However, Tim Foufas' last paycheck was on April 27, 2018, and he remained owed for the work he performed thereafter. In April 2019, PFCO paid Tim Foufas $35,750 which represented the amount owed to him. Tim Foufas received a 1099-M from PFCO for 2019 reflecting this payment and reported this payment to the IRS.

The Second Adversary Complaint also references a single property on which Tim Foufas worked with Debtor after 2018. In August 2017, TJF Sixth Street Properties LLC, an existing Delaware LLC, changed its name to Astor Street. Tim Foufas was the sole member and owner of Astor Street. At the same time, a new Delaware LLC, Sixth and Gest, was formed. Sixth and Gest was formed for the sole purpose of purchasing an industrial/office building in Cincinnati, Ohio and converting that property to a self-storage property (the "Storage Property").

Astor Street served as the managing member of Sixth and Gest with a 20% membership interest, and 20% of all returns after the investor member received its priority return. The Storage Property was purchased August 31, 2017. Astor Street's contribution was to be through sweat

9

equity, overseeing and managing the construction and renovation of the Storage Property as well as the lease up of customers after the completion of the renovation. Astor Street did so and, in addition, in June 2018 secured a $300,000 loan for construction on the Storage Property, which was later replaced by a non-recourse construction loan. Furthermore, Astor Street and Tim Foufas managed the Storage Property through construction.

The Storage Property opened in February 2020, just before the COVID-19 pandemic first triggered stay at home orders, but was continuing to be developed in phases. Astor Street and Tim Foufas continued to manage the Storage Property, while receiving no fees, in an attempt to increase the value of the Storage Property. However, due to operating costs and the amounts required for additional development and expansion and the challenges created by the COVID-19 pandemic Astor Street, as managing member of Sixth and Gest, has sold the Storage Property at a loss, and will not receive and has not received any distribution nor any fees from the sale. In addition, Astor Street resigned as the managing member of Sixth and Gest prior to the closing of the sale of the Storage Property on November 2, 2021. Astor Street has no continuing operations.

There is no alleged connection between Tim Foufas and Florida. Tim Foufas is an Illinois resident who performed and was paid for work outside of Florida and who had a membership interest in a Delaware LLC related to the acquisition of the Storage Property, located in Ohio. *See* Second Adversary Complaint, ¶¶ 9, 10, 14. As described above, none of the interests or transfers at issue with respect to Tim Foufas concern Florida entities or work performed in Florida.

## IV. LAW AND ARGUMENT

### A.   Withdrawal of the Reference is Required as to Trial Based on Foufas' Right to a Jury Trial

Although United States District Courts have original jurisdiction over all civil bankruptcy proceedings arising under title 11 or arising in or related to cases under title 11 (*see* 28 U.S.C.

§1334(b)), all such cases are automatically referred to bankruptcy courts as a matter of course pursuant to 28 U.S.C. § 157(a), including from the District Court to the Bankruptcy Court. *See Stettin v. Mooring Capital Fund, LLC (In re Rothstein, Rosenfeldt, Adler, P.A.)*, No. 12-60123-CIV, 2012 WL 827200, at *1 (S.D. Fla. Mar. 9, 2012) (citing Local Rule S.D. Fla. 87.2). 28 U.S.C. § 157(d), however, provides that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). Withdrawal is required when "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." *Id.* Pursuant to the Bankruptcy Court's local rules, motions to withdraw the reference are filed in the Bankruptcy Court, and then transmitted to the District Court when the record is complete and all permitted briefing on the motion has concluded. *See* Bankr. S.D. Fla. L. Rule 5011-1(A)-(C).

Withdrawal of the reference as to trial is required for claims as to which the defendant has a right to a jury trial, has demanded a jury trial, and does not consent to a jury trial in a bankruptcy court. The United States Supreme Court has explicitly confirmed the right to a jury trial in fraudulent conveyance actions. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 64 (1989) ("We do hold, however, that whatever the answers to these questions, the Seventh Amendment entitles petitioners to the jury trial they requested."). The right to a jury trial extends to claims which otherwise would not on their own create a right to a jury trial when those claims "share common issues of fact" with claims that do create a right to a jury trial. *Torcise v. Community Bank of Homestead*, 131 B.R. 503, 508 (S.D. Fla. 1991).

As a result, the District Court has recognized that when there is a right to a jury trial as to the claims against a defendant, a demand for a jury trial by that defendant, no consent by that

defendant to the Bankruptcy Court conducting the jury trial, and no waiver of the right to a jury trial, the Bankruptcy Court "may not try any issues as to [that defendant] that are triable by a jury." *Stettin*, 2012 WL 827200, at *5 (S.D. Fla. Mar. 9, 2012); *see also* 28 U.S.C. § 157(e) ("If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court <u>and with the express consent of all the parties</u>.") (emphasis added). Waiver of the right to a jury trial in a fraudulent conveyance action can occur if the defendant in the action filed a proof of claim as a creditor in the underlying bankruptcy action. *In re Omni Capital Group, Ltd.*, 163 B.R. 607, 608 (S.D. Fla. 1994). However, when the right to jury trial exists and has not been waived and where there is no consent to trial in the Bankruptcy Court the District Court must withdraw the reference of a case to the Bankruptcy Court as to trial. *Stettin*, 2012 WL 827200, at *5.

This is exactly the situation here. Plaintiff's claims against Tim Foufas include fraudulent conveyance claims, just like the claims at issue in *Granfinanciera*. *See generally* Second Adversary Complaint. To the extent that Plaintiff asserts any other claims against Tim Foufas (i.e. the claim for injunction against "all Defendants" in Count XII), as to Tim Foufas such claims are based on the same issues of fact—the transfers to Tim Foufas—which are the basis for the fraudulent conveyance claim against Tim Foufas because those facts are the only facts regarding Tim Foufas alleged in the Second Adversary Complaint. *See generally* Second Adversary Complaint. Therefore, Tim Foufas has a right to a jury trial as to all claims against him. Tim Foufas did not file a proof of claim in the underlying bankruptcy proceeding, and has not otherwise waived his right to a jury trial on the claims against him. Tim Foufas has exercised his right to demand a jury trial by, contemporaneously with the filing of this motion, filing a demand for jury trial in the

Bankruptcy Court to memorialize his demand for a jury trial. However, as is clearly stated therein, Tim Foufas does not consent to the Bankruptcy Court conducting a jury trial and filed his notice of jury demand in the Bankruptcy Court only because this matter is currently pending in the Bankruptcy Court. As a result, the reference of this case must, at a minimum, be withdrawn as to trial.

**B.      Immediate Withdrawal of the Reference is Appropriate as to the Claims Against Tim Foufas**

At its core, withdrawal of the reference requires "cause" to do so. *Dione v. Simmons (In re Simmons),* 200 F.3d 738, 741 (11th Cir. 2000). In determining whether cause exists courts can consider "such goals as advancing uniformity in bankruptcy administration, decreasing forum shopping and confusion, promoting the economical use of the parties' resources, and facilitating the bankruptcy process." *Id.* at 742 (internal citation omitted). Additional factors courts may consider include, among others, the efficient use of judicial resources, the existence of a jury demand, and the prevention of delay. *Official Committee of Unsecured Creditors of Tousa, Inc. v. Technical Olympic, S.A. (In re Tousa, Inc.)*, 2010 WL 1644456, at *3 (S.D. Fla. Apr. 19, 2010). Substantial prejudice to the defendant may be a basis for immediately withdrawing the reference. *Stettin*, 2012 WL 827200, at *4 (not immediately withdrawing the reference because of the lack of substantial prejudice). Taken together, these factors weigh in favor of immediately withdrawing the reference as to the claims against Tim Foufas.

**i.      Tim Foufas' Right to a Jury Trial and Jury Demand Support Immediate Withdrawal of the Reference**

Courts routinely recognize "the relevance of a party's right to a jury trial in district court in deciding whether to withdraw reference to the bankruptcy court" however, a right to jury trial alone does not require immediate withdrawal of the reference. *Tousa, Inc.*, 2010 WL 1644456, at

13

*5 (denying without prejudice motion to withdraw the reference based on intent to file a jury demand). Tim Foufas' right to a jury trial, and his invocation of that right, supports immediate withdrawal of the reference as to the claims against him.

Importantly, Tim Foufas has a right to a jury trial as to all claims against him and has exercised that right by filing a jury demand, while the other Debtor-connected defendants generally do not have a right to a jury trial. In this case, as noted above, Tim Foufas' right to a jury trial extends to all claims against him because all of those claims arise from the same facts, the claims include fraudulent transfer claims for which there is a right to a jury trial, and he has already filed a jury demand. On the other hand, the claims against the other defendants are not subject to the right to a jury trial either because no right to a jury trial ever existed for such claims or because the right to a jury trial has been waived. *See generally* Second Adversary Complaint (asserting claims against Debtor and Debtor-connected defendants for an injunction, piercing the corporate veil and under 11 U.S.C. § 541, 542, and 550); *Crews v. Lyons (In re Lyons)*, 200 B.R. 459, 460 (Bankr. S.D. Ga. 1994) (filing for bankruptcy generally waives a debtor's right to a jury trial); *Federal Trade Commission v. On Point Global LLC*, No. 19-25046, 2020 WL 4505811, at *2 (S.D. Fla. Aug. 4, 2020) (claims for equitable relief, including claims for an injunction, do not include a right to jury trial); *In re Checiek*, 492 B.R. 918, 920 (Bankr. M.D. Fla. 2013) (piercing the corporate veil is an equitable remedy); *Welt v. Leshin* (*In re Warmus*), 252 B.R. 584, 586 (Bankr. S.D. Fla. 2000) (no right to a jury trial for claims asserted under 11 U.S.C. §§ 541, 542, and 550).

The fact that Tim Foufas has a right to a jury trial for all claims against him, and has exercised that right, while none of the Debtor-connected defendants have the same right weighs strongly in favor of immediately withdrawing the reference for the claims against Tim Foufas.

### ii. The Parties' Resources and Judicial Resources Will Be Conserved and Delay Prevented by Immediately Withdrawing the Reference, While Failing to Do So Will Substantially Prejudice Tim Foufas

Both judicial resources and the parties' resources are conserved when the parties and the court are not required to expend unnecessary resources. *In re Certified HR Services Company*, No. 07-61169, 2008 WL 9424996, at * 3 (S.D. Fla. May 30, 2008). Failing to withdraw the reference in this case will require the parties and the courts to expend unnecessary resources which can be avoided by an immediate withdrawal of the reference to the Bankruptcy Court. When a bankruptcy court can only render findings of fact and conclusions of law that are reviewed de novo by a district court, that two-step process is inherently less efficient than a one-step process of having the district court hear and decide the matter in the first instance. *Id.* Absent the filing of a proof of claim, and absent consent by a party being sued, the Bankruptcy Court may not finally adjudicate state law claims against a defendant. *See Stern v. Marshall*, 564 U.S. 462, 503, 131 S. Ct. 2594, 2620, 180 L. Ed. 2d 475 (2011) ("The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."). Plaintiff asserts state law fraudulent conveyance claims against Tim Foufas, and Tim Foufas has not filed a proof of claim or consented to the Bankruptcy Court's final adjudication of such claims against him. Second Adversary Complaint, ¶¶ 132-175. In fact, Tim Foufas has objected to the Bankruptcy Court's final adjudication of state law claims against him.

As a result, courts have found that bankruptcy courts may only issue proposed findings of fact and conclusions of law as to fraudulent conveyance claims. *See, e.g., Stettin,* 2012 WL 827200, at *4. Doing so would result in the Bankruptcy Court having to resolve the extent of its own jurisdiction (i.e. whether or not it can finally adjudicate such a claim) which the District Court would then have to review, along with the Bankruptcy Court having to make a substantive

determination of the merits of the case in resolving, for example, any dispositive motion, which, again, the District Court would thus have to review. *See Mukamal v. The Stillwater Market Neutral Fund II, L.P. (In re Palm Beach Finance Partners, L.P.)*, No. 12-80500, Adv. No. 11-02865, 2013 WL 3490652, at *3-*4 (S.D. Fla. Jul. 8, 2013). This is inherently inefficient and can be avoided by immediately withdrawing the reference and allowing the District Court to hear and determine these claims in the first instance.

Failing to immediately withdraw the reference would significantly prejudice Tim Foufas. The allegations against Debtor include a scheme beginning in 1995 and continuing through to the present to defraud Mrs. Foufas and the IRS using a variety of offshore trusts and foreign bank accounts. *See generally* Second Adversary Complaint. There are no allegations that Tim Foufas participated in any of these efforts, and the only alleged transfers to Tim Foufas took place over just two years (2017 to 2019) within this purported decades'-long scheme. *Id.*, ¶ 75. First, there is an inherent prejudice to Tim Foufas of being linked to such a scheme through his inclusion in the Second Adversary Complaint and the broad-brush allegations against Tim Foufas alongside Debtor and the entities allegedly controlled by Debtor, despite the lack of factual overlap between the specific allegations against Tim Foufas as compared to the allegations against Debtor. *Id.*, ¶ 62 (describing Tim Foufas as a "confederate[]" of Debtor), ¶¶ 176-190.

Beyond that, the legal issues that concern Tim Foufas do not overlap with the Debtor and the other defendants. For example, Tim Foufas is contemporaneously moving to dismiss the claims asserted against him in the Second Amended Complaint for a lack of personal jurisdiction because of his lack of any relevant connection to Florida and the resulting violation of his due process rights in forcing him to litigate in Florida, while Debtor filed bankruptcy in Florida and thus has consented to personal jurisdiction in Florida. It would be inefficient to force the other defendants

16

to participate in litigating the issue of Tim Foufas' personal jurisdiction, which applies only to Tim Foufas.

On the other hand, a host of specific disputes have already arisen with regard to Debtor which have nothing to do with Tim Foufas, including whether certain allegedly Debtor-controlled entities are subject to foreign law and Debtor's turnover of assets to Plaintiff. *See generally* Turnover Order; Motion to Strike Affirmative Defenses to First Adversary Complaint, Case No. 21-01235-EPK, ECF No. 15. Neither involves Tim Foufas in any way. To the extent that the reference is not immediately withdrawn, Tim Foufas will be forced to participate in all of the proceedings related to these interests, which are entirely unrelated to him, simply to protect his interests. It is inherently inefficient to force Tim Foufas to participate in such proceedings. At minimum, this is likely to delay any resolution of the claims against Tim Foufas, which could be expeditiously determined by the District Court, likely with minimal discovery, if the reference is withdrawn and the claims against Tim Foufas proceed separately. This substantial prejudice can be avoided by immediately withdrawing the reference, and is further support for immediately withdrawing the reference.

In addition, because of the complete lack of any legal or factual connection between the claims against Tim Foufas and the claims against the other defendants (either in the First Adversary Complaint or the Second Adversary Complaint), none of the usual benefits of allowing the Bankruptcy Court to oversee pretrial matters apply in this case. *See, e.g.*, *Stettin*, 2012 WL 827200, at *5 (noting the efficiency benefit of having the Bankruptcy Court supervise discovery proceedings in all pending adversary proceedings). Here, the legal and factual issues regarding the claims against Tim Foufas will relate solely to his receipt of the transfers to him referenced in the Second Amended Complaint, and specifically whether he received them in good faith and in

exchange for reasonably equivalent value. *See, e.g.,* Second Adversary Complaint, ¶¶ 74, 76, 146, 158, 159, 167, 169; Fla. Stat. 726.109(1). On the other hand, the claims against the other defendants have nothing to do with these transfers and instead revolve around who owns or controls entities in which Tim Foufas has no interest, Debtor's intent in forming those entities, whether assets held by those entities are property of Debtor's bankruptcy estate, the existence and propriety of distributions from those entities to Debtor, and other related issues. *See generally* Second Adversary Complaint.

### iii. The Administration and Uniformity of the Debtor's Bankruptcy Estate Will Not be Adversely Affected by the Immediate Withdrawal of the Reference

The issues surrounding Plaintiff's claims against Tim Foufas are entirely distinct from Plaintiff's claims against the other defendants, most notably Debtor, and therefore the administration and uniformity of Debtor's bankruptcy estate will not be affected by immediately withdrawing the reference to the Bankruptcy Court. First and foremost, a fraudulent conveyance action "asserted against a non-creditor is not integral to the restructuring of debtor-creditor relations." *Mukamal v. BMO Harris Bank, N.A.* (*In re Palm Beach Finance Partners, L.P.*), 501 B.R. 792, 804 (Bankr. S.D. Fla. 2013). Tim Foufas is not a creditor of Debtor, and so this alone supports withdrawing the reference as to the fraudulent conveyance claims asserted against him. Second, uniformity in bankruptcy administration "intertwines closely with the efficiency factor" and so, for the same reasons outlined above, this factor also supports immediately withdrawing the reference in this case. *In re Wi-Sky Inflight, Inc.*, 483 B.R. 788, 796 (N.D. Ga. Oct. 30, 2012). The uniformity at issue is the uniform resolution of bankruptcy, and the "ultimate matter at issue" in the bankruptcy proceeding is "the Debtor's Bankruptcy Plan." *Id.* at 797. Immediately withdrawing the reference and having the District Court hear and determine the claims against Tim Foufas will not negatively impact the Bankruptcy Court's ability to uniformly administer Debtor's

Bankruptcy Plan. Immediately withdrawing the reference does not create a risk of contrary adjudications, because, due to the distinct legal and factual issues between the claims against Tim Foufas and the other defendants, there would be no overlap between the determinations to be made by the District Court and the Bankruptcy Court. Nor, as outlined above, does immediately withdrawing the reference create any risk of delay in administering Debtor's Bankruptcy Plan, as such administration will be subject to the resolution of the claims against Debtor in both the First Adversary Complaint and the Second Adversary Complaint.

## V. CONCLUSION

Tim Foufas has a right to a jury trial and has demanded a jury trial as to the claims against him in the Second Adversary Complaint, requiring withdrawal of the Reference to the Bankruptcy Court as to trial for those claims. As outlined herein, because the claims against Tim Foufas are entirely distinct from the claims against Debtor and the other defendants, an immediate withdrawal of the reference to the Bankruptcy Court is appropriate. The District Court should grant this Motion and immediately withdraw the reference to the Bankruptcy Court as to the claims asserted against Tim Foufas in the Second Adversary Complaint.

Respectfully Submitted,

*/s/ Robert C. Folland*
Robert C. Folland (FL#1007951)
BARNES & THORNBURG LLP
4540 PGA Boulevard, Suite 208
Palm Beach Gardens, FL 33418
561-473-7560 (Telephone)
561-473-7561 (Facsimile)
Rob.Folland@btlaw.com

*Attorney for Defendant Timothy Foufas*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed AND served

electronically on all parties of record using the Court's CM/ECF system.

*/s/ Robert C. Folland*

Robert C. Folland (FL#1007951)

cyberdriveillinois.com is now ilsos.gov

Office of the Secretary of State Jesse White

ilsos.gov

Exhibit 1

## Corporation/LLC Search/Certificate of Good Standing

LLC File Detail Report

| | |
|---|---|
| File Number | 02072602 |
| Entity Name | LEVALON PROPERTIES, LLC |
| Status | REVOKED on Friday, 12 July 2019 |

### Entity Information

Principal Office
333 N MICHIGAN AVE/STE 2225
CHICAGO, IL 606010000

Entity Type
LLC

Type of LLC
Foreign

Organization/Admission Date
Thursday, 18 January 2007

Jurisdiction
DE

Duration
PERPETUAL

### Agent Information

Name
PLATO FOUFAS

Address
333 N MICHIGAN AVE #2225
CHICAGO , IL 60601

Change Date
Wednesday, 20 January 2016

## Annual Report

For Year
2019

Filing Date
00/00/0000

## Managers

Name
Address
LEVALON CORP D5863 332 1
333 N MICHIGAN AVE STE 2225
CHICAGO, IL 606010000

Name
Address
KM SETTLEMENT (TRUST EXISTANCE FILED)
333 N MICHIGAN AVE STE 2225
CHICAGO, IL 606010000

## Series Name

NOT AUTHORIZED TO ESTABLISH SERIES

Return to Search

This information was printed from www.ilsos.gov, the official website of the Illinois Secretary of State's Office.

Mon Dec 06 2021